## Court of Appeals.

*December,* 1886.

## PEOPLE v. McCALLAM.

(Affirming 3 *N. Y. Crim.* 189.)

### LARCENY—EVIDENCE—CHARGE.

The court cannot be required, in the course of a trial, before all the evidence has been given, to rule upon abstract propositions of law as applicable, to the case, there being no motion or application before the court calling for an expression of opinion thereon.

Where the judge's charge covers the facts elicited by the evidence and lays down the correct rules in regard thereto, the court need not charge abstract theories which would not elucidate or explain the case as presented by the testimony.

Upon a trial for larceny where there is evidence tending to connect the defendant with the offense, it is not necessary to show exclusive possession of the stolen property to authorize the conviction of the defendant.

Such a rule only applies when the evidence of guilt is the possession of the property stolen and it is to be presumed from that fact.

The question whether the possession of the stolen property authorizes the conviction of the defendant of larceny is one for the jury.

If the charge, as a whole, gave the correct rule of law upon a given question, the judgment will not be reversed, and if the language employed be capable of different constructions, that construction will be adopted which will lead to an affirmance of the judgment unless it appears that the jury were or might have been misled.

A statement made to a defendant by officers that she might as well own up, as they had evidence enough to convict her, and that she might consider herself under arrest, does not render declarations made thereafter by defendant to such officers inadmissible as made under the influence of fear produced by threat.

Declarations of an accomplice may be given in evidence to contradict the testimony given by him on the trial.

When the amount of money stolen, is uncertain there being some evidence to show that it was $540, there was no error in charging that if the jury believes the defendant took the property that its value was more than $500 they might convict of grand larceny in the first degree, that if the value of the property was over twenty-five dollars they might convict of grand larceny in the second degree, and if the value was less than twenty-five dollars the verdict might be for petty larceny.

APPEAL by defendant, Helen M. McCallam, from a judgment of the general term of the superior court in the fourth department of 29th January, 1885, affirming a conviction of the defendant in the court of sessions of Jefferson county, of grand larceny in the second degree.

The facts appear very fully in the report of the case at general term. See 3 N. Y. Crim. Rep., 189, 191, *et seq.*

*Watson M. Rogers & F. N. Fitch,* for defendant appellant.

*E. C. Emerson,* district attorney for the people, respondent.

(The very able and exhaustive points of the prosecution covered all the questions, which were many and important, raised on the trial. Only a short extract from them bearing on the questions passed by the court of appeals is here given.)

I. The motion to strike out of the case what defendant said about the tracks. This motion was based upon the ground that before these statements were made, the officers had informed her that she was under arrest and that they had evidence enough to convict her, and she might as well own up. The statement made by defendant was not a confession.

Webster defines a confession to be "the acknowledgment of a crime." Burrill in his law dictionary defines it in the same way. Bouvier in his law dictionary defines a confession to be an acknowledgment by the prisoner that he committed the offense. Bishop defines it to be an admission of guilt meant to be inculpatory. 1 Bish. Cr. Pro. (3d Ed.), § 1217. In *People* v. *Parton*, 49 Cal., 632, 637, 638, a confession was defined to be a person's declaration of his agency or participation in a crime. Our own courts have defined it to be a plea of guilt or some acknowledgment tantamount thereto. *Bennac* v. *People*, 4 Barb., 164. And in *Done* v. *People*, 5 Park., 390, it was said that a statement of a prisoner as to where he had concealed stolen money was not a confession.

In this case there was no acknowledgment of guilt, but, on the contrary, a positive assertion of innocence and an explanation which, if true, showed the tracks were honestly made.

The rule invoked has no application to a case where there has been no confession of guilt. It exists simply to prevent a person through fear or by inducement being led to confess himself untruly guilty. Arnold's Case, 8 C. & P., 622; *People* v. *Smith*, 3 How. 227. See also *Duffy* v. *People*, 26 N. Y., 588.

The rule excluding confessions obtained by promises did not exclude facts obtained in consequence of such confessions. And in *Reg.* v. *Gould*, 9 C. & P., 364, it was held that in such cases what the prisoner said was competent evidence as well as what was discovered by means of the statement. See also to same effect, *Deathridge* v. *State*, 1 Sneed, 75; *Jordan* v. *State*, 3 Ga, 382; *Duffy* v. *People*, 26 N. Y., 590.

Again, Bishop lays down the rule that acknowledgments of facts by a prisoner not meant to be inculpatory are receivable in evidence without reference to the question whether they were prompted by hope or fear. 1 Bish. Cr. Pro. (3d Ed.), § 1247.

Upon the facts proven the declaration of defendant would have been competent before the passage of the Criminal Code, even if it should be construed as a confession. Before the

Code was enacted confessions of a prisoner accused of crime were received in all cases when voluntarily made, and they were deemed to be voluntary when they proceeded from the spontaneous expressions of the mind free from any extraneous disturbing cause. *People* v. *Murphy*, 15 N. Y., 384; *People* v. *Wentz*, 37 N. Y., 303; *Teachout* v. *People*. 41 N. Y., 7; *Hendrickson* v. *People*, 10 N. Y., 13; *Kelly* v. *People*, 55 N. Y., 571; *Phillips* v. *People*, 57 Barb., 354; 42 N. Y., 200; *Fralich* v. *People*, 65 Barb., 48; *Coleman* v. *People*, 58 N. Y., 555.

The fact that defendant was under arrest did not render the declaration involuntary. *Murphy* v. *People*, 63 N. Y., 591; *Balbo* v. *People*, 80 N. Y., 484; *People* v. *Rogers*, 18 N. Y., 9; *Hartung* v. *People*, 4 Park., 319.

It is clear that what the defendant said was perfectly voluntary within the above authorities. There were no promises held out to her or threats made, but a simple statement that there was evidence enough to convict her and she had better own up. Thereupon the defendant did not *admit* her criminalty but *denied it*. She was asked who made the tracks and she gave an innocent version of them. There is nothing in this statement of defendant's or in the whole transaction showing it was involuntary. On the contrary, it shows a keen, bright woman, bound not to criminate herself.

The fact that a confession is made in answer to a question which assumes the defendant's guilt, or that it is obtained by artifice or deception, does not render it involuntary. *People* v. *Wentz*, 37 N. Y., 303; *Jefferds* v. *People*, 5 Park., 522; *Kelly* v. *People*. 55 N. Y., 566.

In the cases of *People* v. *Ward*, 15 Wend., 231, and *People* v. *Phillips*, 57 Barb., 354, S. C. 42 N. Y., 200, cited by defendant's counsel, there was a promise held out in each instance to the accused to confess by the officer in whose custody he was and whom the defendant might well suppose had ability to make good his opinion, to wit: That it would be better for him if he would make a full confession.

Therefore it may be well said in those cases there was an

inducement for defendant to confess himself untruly guilty. This would make a confession involuntary. Arnold's Case, 8 C. &. P.., 622 ; *People* v. *Smith,* 3 How., Pr., 237.

To hold under such circumstances the statement which was made by defendant, not for the purpose of implicating her in the crime, but manifestly to shield and exonerate her from suspicion, to be involuntary would be absurd. See *Willett* v. *People,* 27 Hun, 469 ; *Murphy* v. *People,* 63 N. Y., 591; *Cox* v. *People,* 80 N. Y., 502; *People* v. *Wentz,* 37 N. Y., 303; *Woodford* v. *People,* 62 N. Y., 118.

The rule which excludes confessions as being involuntary is much more restricted under the Criminal Code than it was formerly. It is now provided, that confessions may in all cases be given in evidence, unless made under the influence of fear produced by threats, or unless made under a stipulation of the district attorney that the party shall not be prosecuted therefor. Code Crim. Pro., § 395.

In this case, as we have seen, there is a total absence of both threats and fears, consequently the testimony was comtent. *People* v. *McGloin,* 28 Hun, 150 ; 1 N. Y. Crim., 105; S. C. 91 N. Y., 241; S. C. 1 N. Y., Crim. Rep., 154.

II. The motions for the discharge of the defendant at the close of the people's case, and also upon the whole evidence, were properly denied.

These motions seem to have been based on three grounds : First—That there was no direct proof of the *corpus delicti.* Second—No indentification of the stolen property, and third, no proof it was found in defendant's exclusive and conscious possession.

As to the first ground that there was no proof of the *corpus delicti* it is competent to establish the commission of any crime by circumstantial evidence, except homicide. In all other cases both the fact of the crime and the criminal agency of defendant may be made out by circumstantial evidence. 3 Green. Ev. § 30 ; 1 Bish. Cr. Pro. (3d Ed.), § 1057; as modified note 3.

The rule laid down in the Ruloff case observes the above

distinction. That case simply holds that *in cases of homicide only* must either the crime or criminal agency be established by direct evidence. The case itself is founded upon the declaration of Lord Hale in 2 P. C. 290, *that he would never convict a man of murder unless the fact were proven to have been done or the body found. Ruloff* v. *People*, 18 N. Y., 179.

The same rule has been enacted in the Penal Code as applicable to homicide cases alone. Penal Code, § 181.

But if it was applicable to this case it will be seen there was direct evidence of the larceny, viz: The loss of the trunk with the money and its being found rifled in the manner it was. Otherwise there never can be direct proof of the commission of a crime *unless some one saw it committed*. The rule is that when the existence of the principal fact that follows as a necessary consequence without a process of reasoning from the evidentiary fact it is a case of direct proof and not circumstantial. Best on Presumptions, 12, 246; 1 Green Ev., § 13; 3 Black. Com., 371; 1 Phil. Ev., 598.

Whether or not the coin found belonged to Hennessy was for the jury to say upon the evidence.

Positive proof of the identity of the stolen goods is not required. It may be proved by circumstances. Williamson's Case, 1 City Hall Rec., 115; Ferguson's Case, 1 City Hall Rec., 65.

The general rule of law is that the possession of goods recently after they have been stolen is *prima facie* evidence of guilt, and is sufficient of itself to cast upon the possessor the burden of showing how he came by them. 2 Colby, Cr. Law, 195; 2 Russ. on Crimes, 123; 1 Green, Ev., § 34; *Knickerbocker* v. *People*, 43 N. Y., 177; *Goldstein* v. *People*, 82 N. Y., 231.

The evidence as to defendant's possession was sufficient within this rule.

MILLER, J.—The defendant was indicted for the crime of grand larceny in the first degree, and convicted of grand larceny in the second degree.

There was sufficient evidence upon the trial to submit to the jury the question whether the defendant was guilty of the crime for which a conviction was had, and under the facts proved the court was not authorized to direct a verdict of acquittal.

The proof established beyond question that the crime of larceny had been committed, and there was evidence which pointed to the defendant as the guilty party. There was also evidence showing that the defendant had been informed by the wife of Hennessy that the money stolen was in a trunk belonging to Hennessy and kept under a lounge in his house. no person had access to the place where the trunk was kept, from the time it was last seen there prior to its being taken, besides Hennessy and his wife, except the defendant. The defendant was there on the night when the larceny was committed, for the purpose of obtaining a bedstead of Hennessy's wife, as she stated ; and while at her request, Mrs. Hennessy went up stairs to procure the bedstead, she was alone for a period of about fifteen minutes, during which time she had ample opportunity to remove the trunk and its contents without being detected. She was thus in a position where she might have committed the crime alleged.

Several gold coins of the same denomination and bearing the same date as those stolen were found concealed in the defendant's woodshed wrapped up in a newspaper, other portions of which were found in the defendant's house.

There was also evidence of some tracks of the defendant and her daughter, made as if engaged in carrying something and which led to the place where the trunk was found with its contents gone excepting a few silver coins. In regard to these tracks the defendant and her daughter gave testimony which was contradicted by other evidence.

The facts referred to with other circumstances not necessary to enumerate, point to the defendant as the perpetrator of the crime, and it cannot be said, we think, that no offense was made out against her.

It was for the jury to draw the inference as the case stood, and to determine the guilt or innocence of the accused.

No error was committed by the court upon the trial, in refusing to hold, at that stage of the case, that upon a presumption that a larceny has been committed no presumption can be founded that the defendant committed the crime, and that as matter of law no presumption of guilt can be raised from the possession of stolen property, except where the possession is conscious and exclusive on the part of the defendant.

The court clearly had a right to reserve the disposition of these questions until the entire testimony was in, and could not, in accordance with any well established practice, be required to indorse propositions before the case was finally closed. No motion was, at that time, before the court requiring its opinion on the abstract questions presented; and it was eminently proper to withhold its decision in regard to them until all the testimony was introduced and the case was ready for submission to the consideration of the jury. Any other course might lead to confusion and tend to embarrass the action of the court in its final disposition of the questions involved.

The same questions were raised in the requests made to charge, some twenty-seven in all, at the close of the case. In regard to all of these it may be said that they embraced mostly abstract propositions which would tend to confuse the case in the minds of the jury and not lead them to a correct result.

The first proposition, above cited, may properly be said to be strictly accurate, but its presentation, in the form adopted, was in no sense required for the protection of the rights of the accused. The charge, as made, fully covered all the facts elicited by the evidence; and there is no rule, under such circumstances, which demands that the court should deal in presenting abstract theories which would not serve to elucidate or explain the case as presented by the testimony.

The correctness of the proposition made would necessarily follow from the presentation made by the judge in his charge,

of the evidence upon the trial, and the rules applicable to the same. The effect of the entire charge was that the commission of the crime alleged did not, of itself, raise a presumption of the defendant's guilt, and that evidence was essential to establish such guilt.

As to the second proposition it may be remarked that it was not strictly accurate. It was not necessary to show exclusive possession of the stolen property to authorize the conviction of the defendant, and such a rule only applies in a case where the evidence of guilt is the possession of the property stolen and it is to be presumed from that fact. The question whether such possession establishes guilt is one for the jury.

In the case considered, where there was no direct proof of an actual possession but evidence of circumstances which tended to show that the defendant took and had possession of the money, it was for the jury to say whether she was guilty of the offense charged, and the proposition stated would seem to be inapplicable.

What has been already remarked generally as to the first proposition is also applicable to the second, as well as the other requests made.

The rule applicable to the requests made is stated in *Caldwell* v. *N. J. Steamboat Co.*, 47 N. Y. 282, by CHURCH, Ch. J., as follows: "If the charge as a whole conveyed to the jury the correct rule of law on a given question the judgment will not be reversed, although detached sentences may be erroneous; and if the language employed be capable of different constructions, that construction will be adopted which will lead to an affirmance of the judgment, unless it fairly appear that the jury were, or at least might have been, misled."

Having this rule in view we are unable to discover any ground of error in any of the refusals to charge any of the requests made.

Upon the trial a motion was made by the defendant's counsel to strike out all the evidence given by one Kinney in regard to the admissions made by the defendant after certain

statements made by the officer Guest to the defendant, and also all the evidence of one Champlin as to the admissions made by the defendant that certain tracks, testified to, were hers and her daughter's, for the reason they were made under threats by the officers, and that she was told she might as well own up as they had proof to convict her.

A further motion was made to strike out all the evidence given on the subject subsequent to the statement that there was evidence sufficient to convict the defendant. The court denied each of the motions and the defendant excepted separately to the rulings. It appears that three of the constables were at the defendant's house to make a search for the money stolen, when they had the conversation with the defendant as already stated and after which she told them about the tracks.

The question arises in the first place whether the statement made by the defendant was in the nature of a confession to the effect that the defendant was guilty of or had any connection with the crime which had been committed within the meaning of section 395 of the Code of Criminal Procedure-which declares that " A confession of a defendant, whether in the course of judicial proceedings or to a private person, can be given in evidence against him, unless made under the influence of fear produced by threats, or unless made upon a stipulation of the district attorney that he shall not be prosecuted therefor."

The evidence given by the defendant was a statement in. regard to her action, so far as it related to the tracks which had been found in the vicinity of the house where she lived.

Conceding that the declarations made by the defendant can be regarded as confessions, we think, under the testimony introduced and under section 395 of the Criminal Code, *supra*, the evidence was competent.

No threat was employed by the officers which can be said to have induced the defendant to make any statement as to the alleged offense. The assertion of the constable, that he had enough to convict her and that she might consider her-

self under arrest, did not, of itself, constitute a threat which it can be claimed operated upon the mind of the accused and caused her to make the declarations which she did.

In *People* v. *Wentz*, 37 N. Y., 304, the officer told the accused "he was in a bad fix and had got caught at last." The defendant then confessed his guilt, and it was held that there being no inducement, promise, threat or menace used to obtain the confession, or influence its being made, the evidence was properly admitted.

It is not apparent that any distinction exists between the case cited and the one now before us. In both of them the statement was to the effect that the defendant had been detected in the commission of the crime alleged. The statement in each case is substantially alike and the case cited is directly in point.

There is nothing here which indicates that any threat was made or that the declarations of the defendant were induced by fear. That they were untrue is of no consequence so long as they were made by the accused as voluntary statements in her own behalf.

The evidence of Champlin as to the declaration of Angelina Quinn was, we think, competent.

The evidence showed that she was an accomplice in the commission of the crime charged and she had already testified in regard to the transaction. The evidence introduced tended to contradict her testimony and was clearly admissible.

There was no error in the charge of the court to the jury to the effect that if they were convinced that the value of the property taken was over $500, and that the defendant took it, they might convict her of grand larceny in the first degree, and if the property taken was of the value of more than $25, they might convict her of grand larceny in the second degree, and if less than $25, the verdict might be for petit larceny.

The only evidence as to the amount of money lost was that of Hennessy, who swore on his direct examination that he lost $540. He was cross examined at great length in regard to the amount of money that he had, and evidently with

the view of showing that it was uncertain what amount of money in fact was in the trunk. If the amount was less than $500 and more than $25, then the crime was grand larceny in the second degree.

Assuming that the money in the trunk was not stolen,—as $20 in gold and $3.75 in silver quarters were found, and these with the trunk and socks made property over the value of $25,—the crime of grand larceny in the second degree would be established by the evidence. The charge, as made, had a direct bearing upon this portion of the evidence, and if the jury believed that there was doubt as to the property taken amounting to over $500, they might properly have found the defendant guilty of a lesser degree than the first. So also if the evidence was uncertain as to the taking of the trunk and the amount of money testified to by Hennessy, they might have convicted the defendant for the taking of the smaller amounts found in whole or in part, and brought in a verdict of guilty of petit larceny.

The crime charged was grand larceny, and if the evidence established only petit larceny there is no reason why a conviction should not be had for that offense.

We have examined the other questions in the case, and find in none of them any ground of error which justifies a reversal of the judgment.

The conviction should be affirmed.

All concur, except RAPALLO, J. not voting.

NOTE.—As to the distinction between a confession and a statement which is intended to exculpate the defendant, see *State* v. *Carr*, 53 Vt., 37. It was said in this case of a statement made by defendant and given in evidence by a witness, "What he said to Slayton, showed to Slayton that he was casting the blame on Chester, not confessing or designing to confess, or to say anything that would connect himself with the act or crime. of killing. So the case falls outside of the propositions of the law, and of the cases which exclude confessions or admissions induced by promise and hope of favor and benefit."

"Inasmuch as any promise or favor was on the score of his telling what he knew about Chester's connection with the matter, and not his own, the idea of a confession or admission in the sense of the law was not involved. Confes-

sion or admission in that sense means something to the effect that the party himself had some criminal or questionable relation to the alleged crime."

Statements by a defendant to a criminal prosecution which are no part of the *res gestæ*, which are in the nature of self-serving declarations, open to the suspicion of being part of a hastily formed plan of defense, are not competent evidence in favor of defendant.    *Spittorff* v. *State*, 108 Ind. 171.

Contradictory statements of the prisoner are evidence against him before his guilt is established by other means.    *McNeen* v. *Commonwealth*, (Pa.) 5 Cent. Rep., 887.