THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ADOLPH KOENIG, Appellant.

1. MURDER — SUFFIENCY OF EVIDENCE.  The evidence upon the trial of an indictment for homicide reviewed and held sufficient to justify a finding of the deliberation and premeditation necessary to support a verdict convicting the defendant of murder in the first degree.

2. PREMEDITATION AND DELIBERATION.  An instruction "that there is no space of time necessary within which the premeditation and deliberation must occur," does not constitute reversible error where from the context it is apparent that what was meant was, that no particular length or space of time was necessary; especially where the jury is instructed that there must be a deliberate design to effect death, which must precede the act, and the question whether or not there was such deliberation was one for its exclusive determination.

(Argued November 30, 1904; decided December 30, 1904.)

APPEAL from a judgment of the Court of General Sessions of the county of New York, rendered July 22, 1904, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*Andrew C. Morgan, Frederick A. Ware* and *Phill Wald-heimer* for appellant. The evidence in the case is insufficient to sustain the judgment of conviction of murder in the first degree. (*People* v. *Mangano,* 29 Hun, 259; *People* v. *Barberi,* 149 N. Y. 256.) Whether there was opportunity for deliberation and premeditation in the eye of the law was a question of fact to be determined by the jury from all the facts and circumstances involved in the case, and not a question of law to be determined by the court. (*People* v. *Kerrigan,* 147 N. Y. 214; *People* v. *Corey,* 175 N. Y. 342; *People* v. *Koeppling,* 178 N. Y. 253; *People* v. *Rice,* 159 N. Y. 400; *People* v. *Barberi,* 149 N. Y. 256; *People* v. *Majone,* 91 N. Y. 211; *People* v. *Conroy,* 97 N. Y. 76; *McKenna* v. *People,* 81 N. Y. 360; *People* v. *Webster,* 59 Hun, 402; *Howell* v. *People,* 5 Hun, 620; *People* v. *Walworth,* 4 N. Y. Crim. Rep. 362.) The court in his charge excluded from the jury how far the testimony on the part of the prosecution was modified or neutralized by that produced by the defendant, or what inferences should be drawn from any of it, as bearing upon the crucial question in the case, that of deliberation and premeditation, and by so doing defendant was prejudiced thereby and did not have a fair trial. (*McKenna* v. *People,* 81 N. Y. 360; *People* v. *Kelly,* 35 Hun, 296; *People* v. *Barberi,* 149 N. Y. 267; *People* v. *Stokes,* 53 N. Y. 179; *People* v. *Corey,* 175 N. Y. 342.) The court erred in charging the jury as follows: " I repeat to you that there is no space of time necessary within which the premeditation and deliberation must occur." (*People* v. *Barberi,* 149 N. Y. 267; *People* v. *Majone,* 91 N. Y. 211.)

*William Travers Jerome, District Attorney* (*Robert C. Taylor* of counsel), for respondent. It is the province of the jury to find the existence of intent, premeditation and deliberation from all the evidence; and the Court of Appeals will not disturb the finding if there is evidence to sustain it. (*People* v. *Conroy,* 153 N. Y. 174; *People* v. *Taylor,* 138 N. Y. 398; *People* v. *Rice,* 159 N. Y. 400; *People* v. *Ferraro,* 161 N. Y.

365; *People* v. *Egnor*, 175 N. Y. 419; *People* v. *Rodawald*, 177 N. Y. 408.) The trial court committed no error in charging the jury. (*People* v. *Boggiano*, 179 N. Y. 267; *Eggler* v. *People*, 56 N. Y. 642; *Sindram* v. *People*, 88 N. Y. 196; *Greenfield* v. *People*, 85 N. Y. 90; *People* v. *Wilson*, 141 N. Y. 185; *People* v. *Benham*, 160 N. Y. 402; *People* v. *Petmecky*, 99 N. Y. 415; *People* v. *Stone*, 117 N. Y. 480; *People* v. *Mills*, 98 N. Y. 176; *People* v. *Lewis*, 7 N. Y. Crim. Rep. 140.)

CULLEN, Ch. J.   The defendant was convicted of the crime of murder in the first degree in having caused the death of one Mary Kaufmann, on the third day of May (Tuesday), 1904. At the time of the homicide the defendant and the deceased were living together adulterously, the deceased having abandoned her husband to live with the defendant about four months previously. It is very clear that the deceased, at this time, was substantially plying the trade of a common prostitute. The parties were living in a flat which consisted of four rooms; in front, on the street, a sitting room; back of that a bedroom; back of this bedroom another bedroom, and finally, in the rear of the apartment, a kitchen. A door led from each room into the adjoining room. On Sunday, the first of May, one Henry W. Haas, who was employed as a bartender at the Army and Navy Club, with his wife, Lillie Haas, went to lodge with the deceased. Haas and his wife occupied the rear bedroom adjoining the kitchen, while the deceased and the defendant occupied the one adjoining the sitting room. That evening the defendant, the deceased and Mrs. Haas went out to supper together and on their return to the apartment the defendant and the deceased began to quarrel about the latter returning to her husband. Mrs. Haas testified that on that occasion the defendant picked up a table knife, and seizing the deceased by the throat, said: "I will fix you yet." On Monday morning Kaufmann, the husband of the deceased, came to the flat and had a conversation with his wife in which, as he testified, she

promised to return to him.    On Monday evening the deceased, the defendant and Mrs. Haas were in the kitchen of the apartment and the quarrel between the defendant and the deceased was renewed, she telling him that she had seen her husband and was going back to live with him because she had made a mistake in leaving him and her children.    The defendant replied : " I will fix you before you go back."    Haas returned from his work about one o'clock that night and entered the kitchen.    He found the defendant and the deceased still quarreling.    He told them to go to bed, that he wanted a bath.    He testified that the defendant " grabbed " the deceased and said to her, " I will fix you yet," to which she replied, " You will like fun," and with that they left the kitchen and entered their bedroom and closed the door.    Haas, after having taken his bath, retired to bed where his wife already was. They heard the deceased and the defendant still quarreling in the adjoining bedroom, the bed there creaking, and also what Haas described as a " gurgling " noise.    Haas started to get up when his wife told him to mind his own business.    The noise ceased and a few minutes afterwards the defendant passed through their bedroom to the kitchen.    Haas heard him searching among the knives kept there and a few minutes after the defendant returned through the Haas room and closed the door.    Haas and his wife then went to sleep.    Early in the morning they were aroused by a call from the adjoining room to go and get an ambulance.    They found the woman dead on the bed, lying upon her back.    Her face was blue and there were marks on her throat.    She was clad in her chemise with no covering over her.    The defendant also lay in the bed with a comforter over him.    A policeman and an ambulance surgeon were called in.    It was found that the defendant had stabbed himself in the abdomen.    He was removed to a hospital.    An autopsy was held on the body of the deceased which, according to the testimony of the physicians, showed that she came to her death by strangulation.    The medical evidence also showed that pressure on the throat from two to five minutes would be requisite

to cause her death. The defendant told the police offi-
cers that he had left his wife and three friends in the
apartment to go and get some beer, and when he returned he
found his wife in bed apparently dead. The prosecution also
proved by the cross-examination of Mrs. Griesman, a witness
for the defense, that on the Saturday evening prior to the
homicide the defendant and the deceased had a violent quar-
rel, in which the deceased applied vile epithets to the defend-
ant and reproached herself for having left her husband to go
with him, while the defendant threatened to kill both the
witness and the deceased. The story told by the defendant,
as a witness on his own behalf, was substantially this : He
denied there had been any quarrels between the deceased and
himself, or that he had threatened her life. He said that the
deceased had been drinking very hard that night; that after
they retired to their bedroom she commenced singing and
wanted to drink more whisky; that he threw away the
whisky that was in the room ; that deceased then went into
the parlor and started to dress, saying she would go out and
get some whisky ; that he stopped her, saying, " You are not
going on the street to-night; " that thereupon she seized a
penknife that lay on the table and cut him on the wrist ; that
he caught her by the neck, pushed her into the bedroom and
threw her on the bed face downwards, saying, " Now, you
drunken fool, lay there for a while ; " that he took a pillow
that was lying there and threw it on her, and thereupon went
through Haas' room ; that on his return he spoke to the
deceased, and to his " fatal surprise found her dead ; " there-
upon he went again through Haas' room, got a large knife
and stabbed himself.

The defendant's counsel contends that the evidence was
insufficient to authorize a finding of the deliberation and pre-
meditation necessary to constitute murder in the first degree.
We think otherwise. That the deceased came to her death
at the defendant's hands is not denied. While the testimony
of the defendant, if believed, would doubtless reduce the
degree of his crime, or possibly even acquit him altogether,

there being no eye-witnesses to the occurrence, the circumstances were sufficient to justify the jury in discrediting his story. No blood was seen by the ambulance surgeon upon his wrist, where he states he was cut by the knife in the hands of the deceased. She was found lying on her back on the bed instead of being on her face. She had nothing on except a sleeveless chemise, instead of being partially dressed to go out on the street. Many other circumstances are inconsistent with his story. In addition to this, we have the repeated threats of the defendant against the deceased, and a motive — his anger at her intended desertion of him ànd return to her husband. The case in many respects closely resembles that of *People* v. *Pullerson* (159 N. Y. 339). There, also, the homicide was committed by strangulation, and no one saw the deed done. Yet it was held that, in view of the time required to cause death by strangulation and the previous threats of the defendant, the question of deliberation was one of fact to be determined by the jury.

The only other questions that it is necessary to discuss on this appeal arise out of the charge of the court as to the time requisite to constitute deliberation. In answer to a request by the prosecution the court charged : " If there be sufficient deliberation to form a design to take life and to put that design into execution by destroying life, there is sufficient deliberation to constitute murder no matter whether the design is formed at the instant of striking the fatal blow, or whether it be contemplated for months ; it is enough that the intention precedes the act, although that follows immediately." This request is a literal extract from the opinion of Judge Johnson in *People* v. *Clark* (7 N. Y. 385) at 394. That case arose under the old law (2 R. S. 656, secs. 4, 5), and before the legislature had made deliberation, as well as premeditation, a necessary ingredient of murder in the first degree. Nevertheless this very excerpt is quoted with approval by Ruger, Chief Judge, in *People* v. *Conroy* (97 N. Y. 62) at page 76, which arose under our present statute. I think very probably it is also to be found in some other recent cases.

Despite this approval I am frank to say that I would be loath to uphold a charge where the proposition formulated by Judge Johnson constituted the only instruction to the jury on the subject of deliberation. It may be logically correct, but it ·may also be liable to mislead a jury. Probably the best definitions of murder in the first degree under our present law are to be found in the opinions in *Leighton* v. *People* (88 N. Y. 117) and *People* v. *Majone* (91 N. Y. 211). In the first case Judge Danforth said : " If the killing is not the instant effect of impulse, if there is hesitation or doubt to overcome, a choice made as the result of thought, however short the struggle between the intention and the act, it is sufficient to characterize the crime as deliberate and premeditated murder." In the second, Judge Earl wrote : " Under the statute there must be not only an intention to kill, but there must also be a deliberate and premeditated design to kill. Such design must precede the killing by some appreciable space of time. But the time need not be long. It must be sufficient for some reflection and consideration upon the matter, for choice to kill or not to kill, and for the formation of a definite purpose to kill, and when the time is sufficient for this it matters not how brief it is. The human mind acts with celerity which it is sometimes impossible to measure, and whether a deliberate and premeditated design to kill was formed must be determined from all the circumstances of the case." I very much question whether these statements of the law can be substantially improved, and I think it would be far wiser for trial courts to adopt these definitions than to refer to cases which arose under different statutes. But the charge of the learned trial judge in this case must be taken as a whole and its correctness is not to be determined on isolated extracts. (*People* v. *McCallam,* 103 N. Y. 587; *People* v. *Dimick,* 107 N. Y. 13; *People* v. *Taylor,* 138 N. Y. 398.) While he charged the excerpt from *People* v. *Clark,* already given, he also charged the law as laid down by Judges Danforth and Earl in the exact language which we have quoted. He then said to the

jury: "You must determine from the facts proven here whether this defendant intended to kill Mary Kaufmann. If he did intend to kill her, was it premeditated and deliberated? If it was pursuant to such a design to effect her death that he killed her he is guilty of murder in the first degree. I repeat to you that there is no space of time necessary within which the premeditation and deliberation must occur. It need not be for months, but it must occur; whether it occurs or not is a question of fact for you, gentlemen, to determine from the evidence in this case." Exception was taken to that part of the language of the trial court already quoted, " that there is no space of time necessary within which the premeditation and deliberation must occur." The language criticised, however, is only part of a sentence which must be construed as a whole. So construed the fair interpretation is that no particular length or space of time was necessary for deliberation, not that no time at all was necessary. This is apparent from what occurred subsequently. The counsel for the defendant stated that he desired to except to the charge of the court in stating substantially " there is no space of time necessary for premeditation and deliberation before the commission of the act which effected death." To this the court responded : " I don't think I said quite that; I said there was no fixed duration of time necessary. It is necessary for the jury to find there was premeditation and deliberation, but no measured length of time was necessary for them to find that it existed." If there was any danger of the jury misunderstanding the previous instruction of the court, it was entirely removed by this explicit statement. Again and again throughout the charge the jurors were told that to convict the defendant of the crime charged in the indictment there must have been deliberation, and that whether there was deliberation or not was a question of fact exclusively for their determination. Reading the charge as a whole, though there are parts of it that might have been better expressed, and possibly still better omitted, we do not see how the jury could fail to understand that to constitute

murder in the first degree there must be a deliberate design to effect death, and that such deliberation must precede the act.

The judgment of conviction should be affirmed.

GRAY, O'BRIEN, BARTLETT, HAIGHT, MARTIN and VANN, JJ., concur.

Judgment of· conviction affirmed.