# CASES DETERMINED

IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW JERSEY.

JUNE TERM, 1907.

---

## THE STATE v. FREDERICK LANG.

Argued February 20, 1907—Decided June 10, 1907.

1. The improper composition of a grand jury does not constitute a ground for a plea in abatement. The remedy in such a case is to challenge, before indictment found, or to move to quash afterward.
2. The provision of our Criminal Procedure act which requires a challenge to a grand juror, based upon his having passed the age limit, to be interposed before he is sworn, and so denies to a person, charged with the commission of a criminal offence, committed after the organization of the grand jury, the right to interpose a challenge on that account, does not deprive such person of the equal protection of the laws guaranteed by the fourteenth amendment of the federal constitution.
3. The fact that a juror who is drawn in a criminal case is a member of the national guard of the state, and that his regiment is on duty at the state camp, justifies the trial court in excusing him from service.
4. In summing up to the jury, so long as counsel confines himself to the evidence, what is said by him in its discussion by way of comment, denunciation or appeal, affords no ground of exception.

On error to Middlesex Oyer and Terminer.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRET-
SON and REED.

For the plaintiff in error, *Alan H. Strong.*

For the state, *George Berdine,* prosecutor of the pleas.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.    The plaintiff in error was
tried and convicted in the Middlesex Oyer and Terminer upon
an indictment charging him with the murder of one Katie
Gordon, and the jury, by its verdict, fixed the grade of his
crime as murder in the first degree.    The entire record of
the proceedings had at the trial has been returned with the
writ, as provided by the one hundred and thirty-sixth section
of the Criminal Procedure act of 1898.

The first and second causes of reversal challenge the cor-
rectness of the ruling of the trial court in sustaining a de-
murrer to a plea in abatement filed by the defendant, and in
overruling a motion to quash the indictment.    Both the plea
and the motion were rested upon the same proposition, viz.,
that the indictment was not found by a lawfully-constituted
grand jury, because two of the members of that body were
over sixty-five years of age.    By the provision of our statute
which prescribes the qualifications of grand jurors, it is en-
acted that "Every person summoned as a grand juror in any
court of this state    *    *    *    shall be a citizen of this state,
and resident within the county from which he shall be taken,
and above the age of twenty-one and under the age of sixty-
five years; and if any person who is not so qualified shall be
summoned as a grand juror    *    *    *    it shall be good cause
of challenge to any such juror;    *    *    *    provided, that no
exception to any such juror on account of his citizenship or
age    *    *    *    shall be allowed after he has been sworn or
affirmed." *Gen. Stat., p.* 1853, § 6.    It appears upon the face
of the indictment that the crime charged against the defend-

ant was committed by him while the grand inquest was in session. He was, therefore, debarred by the statute from interposing a challenge to any of its members on account of age, and the basis of his plea in abatement, and of his motion to quash, is that the deprivation of this right—which is afforded to all persons who are charged with violations of the criminal law which have occurred prior to the impaneling of the grand jury—is a denial of that equal protection of the laws which is guaranteed to every person by the fourteenth amendment to the federal constitution.

It is settled in this state that the improper composition of a grand jury will not constitute a ground for a plea in abatement. The remedy in such case is to challenge before indictment found, or to move to quash afterward. *Gibbs and Stanton* v. *State,* 16 *Vroom* 379; *S. C.,* on error, 17 *Id.* 353. And where the defendant has had an opportunity to challenge a grand juror before he is sworn, and has neglected to avail himself of it, he cannot afterward take advantage of the lack of qualification of such grand juror by a motion to quash the indictment. *State* v. *Hoffman,* 42 *Id.* 285. The ruling of the trial court, therefore, sustaining the demurrer to the plea in abatement was proper, under the cases cited, for the reason that the defendant was not entitled to question the legality of the grand jury by such a plea. But, as he had been afforded no opportunity to interpose a challenge to either of the members of that body who were over the age of sixty-five years, he was entitled to attack the legality of that body by a motion to quash, and the determination of the propriety of the action of the trial court in overruling that motion requires a consideration of the meritorious question presented thereby.

The proposition that the cited provision of our Jury act is violative of the fourteenth amendment of the federal constitution, because it does not afford to all persons charged with crime equal protection, seems to us to be unsound. The reason why the legislature has seen fit to confer upon a person who is charged with a criminal offence, the privilege of challenging a grand juror who is over sixty-five years of age, provided the challenge is interposed before the grand juror is

sworn, is not easy to understand. It is plain, however, that it was not for the purpose of protecting the alleged criminal against an unfounded indictment, for the legislature, by providing that, after such grand juror is sworn, he shall be as fully qualified to serve as if he had been under the stated age, has recognized that advancing years is no ground for imputing lack of impartiality to a citizen who is drawn for grand jury service. We are not able to perceive, nor has counsel pointed out to us, how the privilege of interposing a challenge on such a ground affords any "protection," within the meaning of the federal constitution, to a person charged with crime. But, assuming that some benefit is conferred by the privilege to those persons whose alleged violations have antedated the impaneling of the grand jury, and that the benefit is not shared in by those who are charged with having committed crimes while the grand jury is in session, the fact that the latter class are not permitted to share in the benefit does not constitute a violation of the equal protection clause of the fourteenth amendment. As was declared by the Supreme Court of the United States, in *Hayes* v. *Missouri,* 120 *U. S.* 68, that provision "does not prohibit legislation which is limited either in the objects to which it is directed, or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike, *under like circumstances and conditions,* both in the privileges conferred and in the liabilities imposed." It was this view of the scope of the provision which led the same tribunal, in the case of *Missouri* v. *Lewis,* 101 *Id.* 22, to hold that it was not violated by a statute which permitted an appeal from the final judgment of certain of the Circuit Courts of the State of Missouri, and denied it as to judgments rendered by others of such courts, and which led to the conclusion in *Brown* v. *New Jersey,* 175 *Id.* 172, that the amendment did not prohibit a state from enacting that in a criminal trial had before a struck jury the defendant should be entitled to only five peremptory challenges, although ordinarily on the trial of indictments the right to twenty peremptory challenges was given. Our act prescribing the qualification of grand

jurors treats alike all persons charged with crime, *under like circumstances and conditions*. The province of the grand jury is to make diligent inquiry concerning all alleged violations of the criminal law, not only those which have occurred before its organization, but those which have occurred during its session. *All* persons who have been charged with violating the law prior to the organization of the grand jury, are granted the privilege of challenging a grand juror, who is over sixty-five years of age; the privilege is denied to *all* persons who are charged with having committed a crime during the sitting of the grand jury. The defendant in error was not denied the equal protection of the laws in not being afforded an opportunity to challenge the two members of the grand jury referred to in his motion to quash, and the trial court, therefore, was guilty of no error in overruling that motion.

But if our consideration of the question had led us to the conclusion that the criticism upon the indictment was well founded, and that there was error in the refusal to quash, we, nevertheless, would not be justified in reversing this judgment on that account. In the case of *Gibbs and Stanton* v. *State, supra,* where the defendants sought to reverse a conviction upon a similar ground, this court—after pointing out that, under the legal system which has prevailed in this state since the enactment of the eighty-ninth section of the Criminal Procedure act, in the year 1855, no error, either of substance or form, will work the reversal of a criminal judgment, unless it is of such a nature that it either did, or might have, prejudiced the defendant on the trial of the cause—sustained the judgment then under review, on the ground that, as the conviction of the defendants was upon their own confession, it was undeniable that the alleged imperfections in the preliminary proceedings could not have prejudiced them upon their trial. The section of the act of 1855 referred to in the cited case is to the effect that no judgment given upon any indictment shall be reversed "for any error except such as shall, or may, have prejudiced the defendant in maintaining his defence upon the merits." The one hundred and thirty-sixth

section of the Criminal Procedure act of 1898, under which the present review is had, contains precisely the same provision as the act of 1855, and the question is, therefore, presented for determination, whether the imperfections in the preliminary proceedings could have prejudiced the defendant in maintaining his defence upon the merits. The verdict of the jury declaring the guilt of the defendant is as decisive of the truth of that fact, when based upon a consideration of all the proofs submitted, as when based upon the admission of the defendant himself. That being so (to repeat the declaration in Gibbs and Stanton *v.* State), "It is consequently undeniable that the alleged imperfections in the preliminary proceedings could not have prejudiced the defendant upon his trial."

The next ground of reversal attacks the action of the trial court in excusing one Charles Jackson from service as a juror. It appeared, from the examination of the juror on his *voir dire,* that he was a member of the national guard of the state, and that his regiment was then in camp at the state camp grounds at Sea Girt. Upon this fact appearing he was excused from service by the court of its own motion. That the trial court has power to discharge a juror who is drawn in a criminal case, provided reasonable cause exists for such judicial action, is fully settled in this state. *Patterson* v. *State,* 19 *Vroom* 381; *Aaronson* v. *State, 27 Id.* 9. Counsel urges before us that in the present case no reasonable cause existed for excusing the juror, and that therefore the action of the court was not justified under the cases cited. Matters of this kind arising during the course of the trial must, necessarily, be left largely to the discretion of the trial judge, and, unless it be made plain that he has abused his discretion, and that the defendant may have suffered injury thereby, the propriety of his action cannot be challenged upon review. In the present case not only was there no abuse of judicial discretion, but, on the contrary, the excusing of the juror from service was eminently proper under the conditions disclosed.

The next cause of reversal is directed at the instruction of the court to the jury as to the constituents of the crime of

murder of the first degree, the contention being that there was error in what was said to the jury upon the subject of deliberation and premeditation. The court charged as follows: "Murder in the first degree consists in the taking of a human life with intent to kill, and that intent must be executed with deliberation and premeditation; it is not necessary that that deliberation and premeditation should continue for an hour, or even for a minute; it is enough that the design to kill be fully formed and purposely executed. You will see therefore that the two important elements necessary to constitute the crime of murder in the first degree are an intent to kill, and the execution of that intent with deliberation and premeditation. I do not know that I can define those words better than they define themselves. Deliberation and premeditation imply a weighing of the matter and a forethought with regard to the matter, but, as I have stated, that weighing of the matter, and that forethought, need not be for an hour, or even for a minute." The ground of objection to this instruction is that the court, by declaring that "it is enough that the design to kill be fully formed and purposely executed," eliminated the necessity for deliberation, notwithstanding the fact that the court had previously instructed the jury that, in order to constitute the crime of murder in the first degree, the intent to take life must be executed with deliberation and premeditation. It is enough, in disposing of this attack upon the charge, to say that the definition complained of has received the approval, not only of this court, but of the Court of Errors and Appeals, in every case in which it has been submitted for consideration since the decision in *Donnelly* v. *State; 2 Dutcher* 601, and that it is no longer properly open to criticism.

The next cause of reversal is directed at an alleged error of the trial court in refusing to stop the prosecutor of the pleas, in his summing up to the jury, upon the application of the defendant. The language complained of was that the defendant was "a monster in his passions, licentious in his desires, beastly in his love, brutal when thwarted and cowardly when caught." The evidence submitted to the jury showed

that the defendant was the uncle of the girl whom he killed, a brother of her mother; it was fairly to be inferred from the proofs that he desired to marry her, notwithstanding the fact that a marriage between them would have been incestuous, and that if this could not be accomplished he desired to have her submit herself to his embraces, without the sanction of a marriage ceremony. The proofs also fairly support the inference that he killed her because she refused to submit herself to his wishes. In view of these facts, it seems to us that the prosecutor was within his privilege in making the statement which was objected to. It is necessary for the proper administration of justice that, in the summing up to the jury, counsel shall be given the widest latitude within the four corners of the evidence, and, so long as he confines himself to the evidence, what is said by him in its discussion, by way of comment, denunciation or appeal, affords no ground of exception. *State* v. *Barker,* 39 *Vroom* 19.

The last cause for reversal assigned is that the verdict is not sustained by the evidence. A reference to the decision of the Court of Errors and Appeals, in the case of *State* v. *Jaggers,* 42 *Vroom* 281, is all that is necessary for the disposition of this point. It is there pointed out that under the one hundred and thirty-sixth section of the Criminal Procedure act, as originally passed in 1894, the court of review was required to examine the evidence for the purpose of determining whether or not it justified the verdict of the jury, but that since the amendment of that section by the revision of 1898 that duty was no longer required of the reviewing tribunal. It is contended by counsel, in his argument, that the certification by the trial judge of the entire record of the proceedings had upon the trial is practically the same as if this court had issued its *certiorari* to the Oyer and Terminer to send up the evidence in the cause. He refers to a suggestion to that effect made by the court in *State* v. *Hummer,* 44 *Vroom* 714, and the argument based upon this suggestion is that the court, having before it the evidence, ought to examine it for the purpose of determining whether it justifies the verdict of the jury. It seems to us, however, that the cer-

tification of the proceedings before it, made by the Oyer, cannot be treated as a writ of *certiorari*. To so hold would be to declare that the legislature could confer the *certiorari* power upon the Court of Oyer and Terminer, or, rather, upon a convicted defendant, for the certification provided by the statute is not left to the discretion of the court which makes it, but to the defendant who sues out the writ of error to review the judgment against him.

We conclude, upon an examination of all the matters presented to us on the reasons for reversal and by the assignments of error, that the conviction under review should be affirmed.