## COURT OF APPEALS.

### Nov. 9, 1909.

## THE PEOPLE v. FRANK JACKSON.

### (196 N. Y. 357.)

(1). MURDER—EVIDENCE HELD SUFFICIENT TO SUSTAIN JUDGMENT OF CONVICTION.

Defendant was convicted of murder in the first degree. On a review of the evidence, *held*, that it was sufficient to warrant the finding that the homicide was committed with premeditation and deliberation and that the verdict of the jury was amply justified.

(2). SAME—WHEN COURT WILL REVERSE JUDGMENT, ALTHOUGH NO EXCEPTION TAKEN.

While this court may, in a capital case, reverse the judgment even if no exception be taken, and if the error is so substantial as to have jeopardized the rights of the defendant and induced a verdict against him which otherwise would not have been rendered, it would be the duty of the court to reverse without an exception, it is settled law that the defendant cannot claim as a matter of right review of errors to which no objection and exception has been taken.

(3). SAME—TIME AS AN ELEMENT OF PREMEDITATION AND DELIBERATION.

While, under the statute, to constitute murder in the first degree premeditation and deliberation must precede the act of killing, no particular or prescribed lapse of time must occur between the two. It is enough that sufficient time elapses for the jury to find as a matter of fact that premeditation and deliberation did exist.

APPEAL from a judgment of the Supreme Court, rendered December 17, 1908, at a Trial Term for the county of Washington upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*Frederick Fraser* and *A. N. Richards* for appellant. The evidence was insufficient upon which to base a finding of premeditation and deliberation necessary to sustain a verdict con-

victing the defendant of the crime of murder in the first de-
gree. (*Stokes v. People*, 53 N. Y. 164; *People v. Leighton*, 10
Abb. [N. C.] 261; 88 N. Y. 117; *People v. Mangano*, 29 Hun,
259; *People v. Raffo*, 180 N. Y. 434; *People Barberi*, 149 N.
Y. 256; *People v. Conroy*, 97 N. Y. 75; *People v. Majone*, 91
N. Y. 211.) The court committed reversible error in its charge
to the jury. (*People v. Boggiano*, 179 N. Y. 267; *Early v.
State*, 16 Ohio C. C. 646; *Burns v. State*, 3 Ohio Dec. 122;
*People v. Barberi*, 149 N. Y. 256.)

*Erskine C. Rogers, District Attorney,* for respondent. There
was sufficient evidence of premeditation and deliberation. (*Peo-
ple v. Kennedy*, 159 N. Y. 346; *People v. Ferraro*,
161 N. Y. 365.) The court did not commit re-
versible error in the charge to the jury. (*People v. Koenig*,
180 N. Y. 155; *People v. Ferraro*, 161 N. Y. 365; *People v.
Conroy*, 97 N. Y. 62; *People v. Wilson*, 141 N. Y. 85; *People
v. Kennedy*, 159 N. Y. 346; *People v. Hawkins*, 109 N. Y.
408.)

CULLEN, Ch. J.:

The appellant, a colored man, was convicted of murder in
the first degree in having caused the death of Elizabeth Jack-
son, a colored woman, on the 24th day of August, 1908. Though
not man and wife the appellant and deceased had been living
together as such for some time, the relation having been formed
in 1907. For a few weeks prior to the homicide the parties had
been boarding with one Mosher in Sandy Hill, the deceased be-
ing in the service of the family of Judge Ingalsbe as cook, but
returning to Moshers to spend the night with the appellant.
The appellant became jealous of the deceased consorting with
other men and reproached her for her conduct. The dispute
between the parties, though not extending to physical violence,
was sufficiently grave to induce the Moshers to order them from

the house, and the deceased spent the night preceding the homi-
cide at Judge Ingalsbe's and the appellant somewhere without
the Mosher house. The next morning he packed his personal
effects, which were at the Moshers, in a suit case, which he
carried with him to Judge Ingalsbe's. There, at about a quarter
to seven in the morning, he met George Robillard, a coachman
in the employ of Judge Ingalsbe, and the only eye-witness of
the homicide. That witness testified that he was sweeping the
rear stoop when the appellant approached him and asked if
his (Jackson's) wife was up; that he nodded assent; that Jack-
son then went into the kitchen and in about three minutes he
heard a scream; the deceased rushed out followed by the ap-
pellant; that the deceased slipped on one of the steps and fell
on the lawn; that the appellant jumped upon her, putting his
knee on her breast; then he saw the appellant strike towards her
throat three times, though he did not see whether there was
any weapon in his hand; the appellant then ran away leaving
his suit case behind him; that the deceased got up, the blood
spurted out of her throat and in a second her white waist was
covered with blood; the deceased went into the kitchen, and
the witness ran for a doctor. It further appeared from the
testimony that the deceased was immediately taken to the office
of a physician. He found a wound from some sharp instrument
which had severed the carotid artery and jugular vein. The
physician proceeded to tie up the artery and stop the hemor-
rhage, but before that could be entirely accomplished, and in
a very few moments after she had been brought to the office, the
patient died from the injuries she had received. The alarm
being given, search was made for the appellant by a number
of police officers. He was found hiding under the stoop of a
house. One of the officers said to the appellant, " This is a
bad job, you have killed her; " he replied, " I could not help
it, it had to be; I just caught her cheating and I cut her." Be-
ing asked whether he had the razor with which he cut the

deceased the appellant replied, " No, I threw it away in the yard when I cut her." Shortly after a razor was found in the yard covered with stains, which, on expert analysis, proved to be human blood. The story of the defendant, testifying on his own behalf, as to what happened at the time of the homicide, was that on entering the kitchen he found the deceased putting wood on the stove; that he asked for a shirt of his that she had and a bottle of perfume; that the deceased told him to get out, that Mrs. Ingalsbe didn't want him there; that she took the tea kettle off the stove and " started for him," when he ran out of the house; she followed and words followed between them; that again she " started for him," and " I tripped her and as I tripped her she fell, she had something in her hand but I could not discern what it was and when she fell she hollered; before she could get up I grabbed her; in the scuffle some way she got cut; it was not anything on my part at all, I am satisfied that it was not. I first saw the razor afterward on the ground. When she hollered so it commenced to work on me and I couldn't seem to stand her screaming and I kind of stood undecided a few minutes and then I left the scene. I saw blood flowing, that is what excited me, that is what unnerved me; I did not take hold of her hand that I know of, I may have in the scuffle, I cannot say."

If the jury believed the witness Robillard, who was entirely disinterested, there can be no doubt that the homicide was committed by the appellant. Though it was testified that the appellant had a razor, the particular weapon with which the deceased was wounded was not shown to have been his, save by his own admission to the officer upon his arrest. But if the razor had not been discovered at all, the jury would have been warranted in finding that the appellant had wounded the deceased with some sharp weapon, though the identity of the weapon was not disclosed. In addition to that the jury had had the admissions of the appellant himself made to the of-

ficer. On the other hand the story told by the appellant on the stand seems quite improbable.

. The evidence also was sufficient to warrant the finding that the homicide was committed with premeditation and deliberation. The weapon used and the part of the body against which it was directed—in fact it was an attempt to cut the woman's throat—tended to establish that the appellant's intent was to kill. The circumstances surrounding the occurrence also warranted the inference of deliberation. If the razor was the appellant's, as the jury might well find, if indeed it was not compelled to so find, then the fact that he carried it on his person, instead of placing it in the suit case with the rest of his effects, indicates that even when he left the Mosher house he contemplated the probability or possibility of its subsequent use. Nor did anything occur between the appellant and deceased which should constrain the jury to believe that the act of the appellant was one of sudden impulse rather than of deliberation and design. Reviewing the evidence as we must, by reason of the plenary power given to us by the statute in capital cases, we must say that the verdict of the jury was amply justified.

No exception was taken on the trial to the charge of the court. But now one expression is criticised as erroneous, and we are asked to reverse the judgment on that grounds. The charge of the trial judge was eminently fair. It defined accurately the various degrees of criminal homicide and explained the difference in the elements which are necessary to constitute those degrees. He told the jury that there must be premeditation and deliberation to constitute murder in the first degree; that premeditation and deliberation signify an intent proceeding from mental debate, an intent springing from the reasoning powers of a man's brain as distinguished from the impulse of the moment; that lapse of time of itself was not deliberation and premeditation, but lapse of time afforded an opportunity for them. He further said, and this is the part which is criti-

cised by the appellant's counsel: " But the time that elapses which shows deliberation need not be a day, it need not be a minute; it may be a second or a fraction of it. It must be time enough so that reasons arise for not doing the act thought of, and so that the mind makes its choice and decides to do that which is done." Now, while under the statute to constitute murder in the first degree premeditation and deliberation must precede the act of killing, it is the settled law that no particular or prescribed lapse of time must occur between the two. It is enough that sufficient time elapses for the jury to find as a matter of fact that premeditation and deliberation did exist. (*Leighton v. People,* 88 N. Y. 117; *People v. Majone,* 91 N. Y. 211; *People v. Koenig,* 180 N. Y. 155.) So far as the charge of the court asserted this proposition it was clearly correct; but it is asserted that as a matter of fact premeditation and deliberation could not take place within the fraction of a second. In that view I am inclined to concur, but the court had already charged the jury that they must find the premeditation and deliberation as a matter of fact, and it must be remembered that there was no exception taken to the court's charge in this respect. While under section 528 of the Code of Criminal Procedure this court may, in a capital case, reverse the judgment, even if no exception be taken, if we are satisfied that the verdict was against law, it is settled law that the defendant cannot claim as a matter of right a review of errors to which no objection and exception has been taken. (*People v. Driscoll,* 107 N. Y. 414.) The reason and justice of this rule is obvious. The most learned and careful judge will at times during the trial of an action fall into an error which he would at once correct if his attention were called thereto. The purpose of an objection and exception is to call the attention of the judge to the ruling complained of, that he may correct the error if such it is. To permit the party to remain silent and suffer the error to go unchallenged and claim on an appeal from

an adverse judgment the benefit of the error, as if objection and exception had been taken, would not conduce to the proper administration of justice nor tend to secure a fair trial for the defendant, but simply give him an opportunity to reverse on appeal a proper judgment. Of course, if the error was so substantial as to jeopardize the rights of the defendant and induce a verdict against him that otherwise would not be rendered, then it would be our duty to reverse the judgment, although no exception was taken in the trial court. Plainly the error here complained of is not of that character. The court instructed the jury that the existence of premeditation and deliberation was a question of fact which it alone must decide. Moreover, at the close of the charge on the defendant's request the court expressly instructed the jury that " the defendant is not guilty of murder in the first degree, unless the act was perpetrated, not only with the intent to kill, but also with deliberation and premeditation. These three elements must exist in every case in order to constitute that deliberate malice and malignity of heart which is the essential ingredient of the offense. If the defendant inflicted the wound in a sudden transport of passion, excited by what the deceased then said and by the preceding events which, for the time, disturbed his (her) reasoning faculties and deprived him (her) of the capacity to reflect, or while under the influence of some sudden and uncontrollable emotion excited by the final culmination of his (her) misfortunes, as indicated by the train of events which have been related, the act did not constitute murder in the first degree." This is the very language of this court in *People v. Barberi* (149 N. Y. 256, 267) and cured any previous error.

Furthermore, the question seems to have no application to the facts in this case. The appellant chased the deceased out of the kitchen; on her slipping and falling he jumped upon her prostrate form and inflicted the wound which caused her death. There is nothing that occurred outside the kitchen, ac-

cording to either the story of the prosecution or that of the appellant, which could have excited any sudden design to kill during that period. If the jury found premeditation and deliberation, they must have found that that deliberation and premeditation occurred before the deceased ran from the kitchen, if not at the time the defendant left the Mosher house with the razor on his person.

The appellant has had a fair trial, his conviction was right and the judgment should be affirmed.

GRAY, EDWARD T. BARTLETT, HAIGHT, WERNER, WILLARD· BARTLETT and HISCOCK, JJ., concur.

Judgment of conviction affirmed.