## COURT OF APPEALS,

### May 30, 1911.

## THE PEOPLE v. GUISSEPPI SERIMARCO.

(202 N. Y. 225.)

(1.) MURDER—EVIDENCE AS TO PREMEDITATION AND DELIBERATION—WHEN
SUFFICIENT TO WARRANT SUBMISSION TO THE JURY OF THE CHARGE
OF MURDER IN THE FIRST DEGREE.

On examination of the record of conviction of defendant for mur-
der in the first degree, *held*, that the evidence bears directly upon the
question of premeditation and deliberation charged against him and
was of sufficient weight and cogency to warrant the submission to the
jury of the charge of murder in the first degree.

(2.) SAME—FAILURE OF COURT TO INSTRUCT JURY AS TO MANSLAUGHTER IN
FIRST DEGREE.

The fact that the trial justice defined at length the crime of murder
in the first degree and only read the statutory definition of man-
slaughter in the first degree, did not prejudice defendant since the
jury had the right to find him guilty of murder in the second degree,
if in their judgment the evidence warranted such a verdict, and the
fact that they did not find such a verdict precluded the possibility of
finding a verdict based upon guilt of a still lower grade of homicide.

APPEAL from a judgment of the Supreme Court rendered
March 29, 1910, at a Trial Term for the county of Westchester,
upon a verdict convicting the defendant of the crime of murder
in the first degree.

The facts, so far as material, are stated in the opinion.

*George C. Andrews,* for appellant. There was not sufficient
evidence of premeditation and deliberation to constitute murder
in the first degree. (People v. Corey, 157 N. Y. 332.) The
charge was prejudicial to the defendant. (People v. Fiorentino,
197 N. Y. 560.)

*Francis A. Winslow,* District Attorney (*Lee Parsons Davis,*
of counsel), for respondent. The evidence was sufficient to
warrant the finding of the verdict of murder in the first degree.
(People v. Jackson, 196 N. Y. 357; People v. Corey, 157 N. Y.
332; Leighton v. People, 88 N. Y. 117; People v. Majone, 91
N. Y. 211; People v. Del Vermo, 192 N. Y. 470.)

WERNER, J.:

On the 6th day of January, 1910, in the town of Mamaro-
neck, in the county of Westchester, one Savario Feddo, other-
wise known as Fido, met his death by the hand of the defendant,
Guiseppi Serimarco. The immediate cause of death was a
stab wound inflicted by the defendant upon the body of Fido
at a point about one inch above the left groin, extending into
the posterior abdominal wall and severing the external iliac
artery. The defendant was thereafter indicted for the crime of
murder in the first degree, and later he was brought to trial
and convicted. The evidence clearly established the death of
Fido and the defendant's responsibility for it. These facts
have never been at issue and the only questions in the case are
(1) whether the evidence as to the premeditation and delibera-
tion charged against the defendant was of sufficient weight and
cogency to warrant the submission to the jury of the
charge of murder in the first degree, and (2) whether
there was any error in the charge of the learned trial court to
the jury.

The evidence which bears directly upon the question whether
the defendant committed the crime of murder in the first de-
gree is comprehended in a very few words, and its significance
can only be appreciated after a recital of all the circumstances
which cluster around the homicide.

As is indicated by the names of the deceased and the defend-
ant, they were both Italians. They were acquaintances, if not
friends. On the afternoon of the homicide the defendant and

one Alloy met in a saloon at Mamaroneck. There they played cards for about three hours, and during that time each drank about five glasses of beer. At about five o'clock in the afternoon they left the saloon and proceeded to the house of one Tomasso Lorocco, where they remained for supper, during the course of which three pints of beer were consumed by the nine or ten persons who partook of the meal. Meanwhile a young son of Lorocco was sent downstairs to ask if Fido would allow his rooms to be used for dancing, and if he would play for the dancers. The boy returned, saying that Fido did not wish to play as he was tired from the hard work of the day, and must start again early on the morrow. Thereupon the defendant went down to importune the deceased, and soon returned with a message that the latter had consented to play. The party went downstairs and dancing began. Fido played upon the violin. Beer was sent for, and the dancers paused occasionally to partake. The defendant danced so vigorously as to become considerably heated, and he stopped for a drink. He asked Alloy if there was more beer, whereupon Alloy poured out what was left in the pitcher, less than half a glass, and handed it to the defendant, who took it and threw glass and contents at Alloy, who escaped by dodging. Alloy approached the defendant with some words of friendly remonstrance, when the latter struck him a blow with the first. At this juncture the deceased interfered as a peacemaker, with the traditional result. Having suggested to the defendant that he did not want any trouble or quarreling over so slight a matter, Fido put his hands upon the defendant and pushed him to a seat in a chair which stood near the wall. This is the point at which the story of what happened bears directly upon the question of premeditation and deliberation. The defendant, being seated in the chair, and having " sat a little while," according to the statement of Fiorto, the only witness called by him, addressed the deceased and said, " I would like to get my handkerchief from the overcoat," re-

ferring to an overcoat which hung on a hook attached to the wall behind the chair. The defendant stood up, reached for the coat pocket and drew therefrom a large knife with an open, rigid blade, which he instantly plunged into the abdomen of the deceased, with the result already stated. The testimony of this defendant's witness upon this point is corroborated by every one of the six Italian witnesses called for the prosecution, and is contradicted by no one. The mere statement of this evidence discloses the purpose for which it was elicited, and its exact pertinence to the one feature which differentiates the crime of murder in the first degree from the crime of murder in the second degree. It bore directly and cogently upon the question whether there was time for reflection or deliberation between the first murderous impulse and the actual commission of the act. The defendant's suggestion that he would like to get his handkerchief from his coat pocket, followed by his production of the deadly knife is a demonstration of the working of his mind. He apparently realized that if, without explanation or subterfuge, he should reach for his overcoat pocket, his attempt might be anticipated by Fido and the others who were interested in preventing further trouble. It was his evident purpose, therefore, to throw them off their guard, and he chose a method which discloses his conscious thought. What could have been more natural, and more likely to disarm suspicion than his simple request that he be allowed to get his handkerchief? It seems like trifling with reason and common sense to discuss at length this feature of the trial, and we leave it with the suggestion that the evidence not only justified but required the submission to the jury of the two elements of premeditation and deliberation. This is a case precisely covered by the fine definition of Judge Earl in People v. Majone (91 N. Y. 212). To constitute the crime of murder in the first degree there must not only be an intention to kill, but also a deliberate and premeditated design to kill. " Such design must

precede the killing by some appreciable space of time. But the time need not be long. It must be sufficient for some reflection and consideration upon the matter, for choice to kill or not to kill, and for the formation of a definite purpose to kill. And when the time is sufficient for this, it matters not how brief it is. The human mind acts with celerity which it is sometimes impossible to measure, and whether a deliberate and premeditated design to kill was formed must be .determined from all the circumstances of the case." Without this bit of evidence disclosing the defendant's mental operations it might have been prudent, if not necessary, for the trial justice to have withdrawn from the jury the consideration of the charge of: murder in the first degree; but with that evidence in the case, it was for the jury to decide whether the defendant had exercised premeditation and deliberation in forming his intent to kill.

Counsel for the defendant suggests, rather than argues, that the charge of the learned trial court was not quite fair to the accused. He says that the question was not whether the defendant was guilty, " but of what was he guilty; murder in the first degree, murder in the second degree, or manslaughter in one of its degrees?" Defendant's counsel urges that because the justice defined at length the crime of murder in the first degree and only read the statutory definition of manslaugater in the first degree, the defendant's cause must have been prejudiced. The fact that the jury convicted the defendant of murder in the first degree is a sufficient answer to this contention. It is apparent that the defendant could not have been prejudiced by the failure of the trial justice to charge more fully upon the subject of manslaughter in the first degree, for the jury had the right to return a verdict of guilty of murder in the second degree, if in their judgment the evidence warranted such a verdict. The fact that they did not find such a verdict precluded the possibility of finding a verdict based upon guilt of a still

lower grade of homicide, and thus it is evident that the failure of the learned trial justice to charge more fully upon the subject of manslaughter in the first degree was not of the slightest consequence in the case. To all this we may add that the charge was exceedingly clear, and plainly fair. The defendant has been ably defended by competent counsel, he has had an impartial trial, the review of the record discloses no errors, and the judgment of conviction must be affirmed.

CULLEN, Ch. J., HAIGHT, WILLARD BARTLETT, HISCOCK and COLLIN, JJ., concur; CHASE, J., absent.

Judgment of conviction affirmed.