THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. CHARLES D. CLAYTON, PLAINTIFF IN ERROR.

Submitted July 15, 1912—Decided November 18, 1912.

Upon the trial of an indictment for murder the defendant was convicted of murder in the first degree by a jury who had been instructed that "the human mind acts so quickly that if you find that this man shot and had the interval of time, however short, to form that intention, it is enough if he formed the intention and carried it out. That is what is meant by deliberation in the law." *Held*, that this instruction was erroneous under *State* v. *Deliso*, 46 *Vroom* 808, and *State* v. *Mangano*, 48 *Id.* 544.

On error to the Monmouth Oyer and Terminer.

For the plaintiff in error, *R. Ten Broeck Stout.*

For the defendant in error, *John S. Applegate, Jr.*

The opinion of the court was delivered by

GARRISON, J.   The plaintiff in error was tried for the shooting and killing of a police officer who was in the act of

placing a hand upon his shoulder either to arrest him or to detain him or to expostulate with him. The shot may have been fired on a sudden impulse or after premeditation and with a deliberate intent to kill. The jury found the latter.

Upon the question of murder in the first degree the following instruction to the jury is brought before us upon error assigned on a bill of exceptions: "If the shooting was done with deliberation and premeditation—if you find that beyond a reasonable doubt as I told you—then the crime is murder in the first degree. Now, as to the premeditation and deliberation, there need be no particular interval of time, as I told you; the human mind acts so quickly that if you find that this man shot, and had the interval of time, however short, to form that intention, it is enough if he formed the intention and carried it out. That is what is meant by deliberation in the law."

Of the error of this instruction there can be no doubt. In so far as it instructed the jury that the formation and execution of an intention to kill was what was meant by deliberation in the law, it was directly opposed to what we decided in *State* v. *Deliso,* 46 *Vroom* 808; and in so far as it instructed them that the interval of time, however short, required to form the intention to kill included sufficient time for premeditation and deliberation, it was opposed to what we decided in *State* v. *Mangano,* 48 *Id.* 544, as well as to the plainest dictates of reason. For however brief may be the interval of time required for the performance of any one of the three mental acts involved in murder in the first degree, viz., premeditation, willfulness (*i. e.,* intention) and deliberation, the fact remains that they are not only distinct mental acts but also that one succeeds another as was pointed out in State *v.* Deliso; they cannot therefore be synchronous as is implied in this instruction.

As was said by Chancellor Magie in *State* v. *Zdanowicz,* 40 *Vroom* 627, each requires "some appreciable time;" if therefore the briefest period of time appreciable be assigned for the performance of each of these mental acts they could not all be performed in the time thus required for the per-

formance of one of them. Such a construction necessarily emasculates the statute in which the legislature has defined the degrees of murder, and in interpreting this statute we are dealing with the most solemn subject to which language can be applied—the extinction of a human life by judicial decree. This extreme penalty the legislature has declared in unmistakable language shall not be visited upon one who has committed the crime of murder unless it be found by a jury that he contemplated its commission (*i. e.,* premeditated it) then determined upon its commission (*i. e.,* intended it) and then weighed such intent before carrying it into effect (*i. e.,* deliberated). One who is capable of taking human life under these circumstances is in the eye of the law no longer fit to live.

Society has taken upon itself the responsibility for this decree and the legislature is responsible for the words in which it is couched, but upon us falls the responsibility of seeing that words having this awful import are given their actual meaning. The words used are, "willful, deliberate and premeditated." It is true that these words do not import any prescrible period of time and that the mental acts to which they severally refer are capable of being performed with that degree of celerity with which the human mind is proverbially capable of acting.

An instruction to this effect therefore neither minimizes the words of the statute nor subtracts from their meaning and effect. On the other hand an instruction that crowded the performance of these mental acts or of any two of them into the interval of time necessary for the performance of one of them *ipso facto* eliminates some part of the legislative definition and to that extent detracts from the prescribed condition for which alone the law reserves its supreme penalty. Such was the error of the instruction before us.

It is argued that this error was harmless because in the body of the charge the degrees of murder had been accurately defined. So they had, but how were the jury to know which was the law? Our theory of jury trials proceeds upon the fundamental assumption that the jury will take the law from

the court, not that they shall be judges of its correctness or that as between two conflicting statements of the law they will unerringly single out the correct one.

Moreover the circumstances under which the present instruction was given were calculated to impress it upon the jury as expressly intended for their guidance. The bill of exceptions shows that after the jury had been charged and had retired they came into court and announced to the judge that they were unable to agree upon a verdict. The court was not willing to discharge them but expressed a willingness to give them any instructions that they thought might aid them in their difficulties. Thereupon the foreman said, "Well, I think if you will give us a little information upon premeditation, your honor, and also the laws as to first and second degree." An instruction given in response to this suggestion would naturally impress the jury strongly upon the point which the foreman's request showed was the debatable one in their minds. It is clear to us that the trial judge assumed that the jury would regard what he said as supplementing part of what he had already charged them and not as a substitute for the whole of it, but he did not tell them so and they could not know what was in his mind. The result was that the jury was misinstructed upon the critical feature of the case, for while the commission of murder was fairly clear, its commission after premeditation and deliberation was by no means so clear.

The judgment must be reversed and a *venire de novo* awarded.

The plaintiff in error has argued that the trial judge erroneously charged the jury that a verdict of manslaughter could not be rendered and also that he took from the jury the question whether or not the officer was killed while in the performance of his office and duty. An examination of the charge shows that neither of these criticisms is well founded. Each of these matters was left to the jury, as it was proper that it should be, the trial judge expressing his opinion upon the testimony, as it was his right to do. Such expressions are not subject to review. *State* v. *Hummer*, 44 *Vroom* 714.

*For affirmance*—THE CHANCELLOR, BERGEN, VREDEN-
BURGH, JJ.  3.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE,
TRENCHARD, MINTURN, KALISCH, BOGERT, CONGDON, WHITE,
TREACY, JJ.  10.