## ALDRIDGE v. UNITED STATES.*
### No. 5255.

Court of Appeals of District of Columbia.
Argued Dec. 2, 1930.
Decided Jan. 6, 1931.

James F. Reilly, of Washington, D. C., for appellant.

Leo A. Rover and Walter M. Shea, both of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice.

This appeal is from a judgment of the Supreme Court of the District of Columbia on a verdict convicting appellant, defendant below, of the crime of murder in the first degree.

It appears that early in the morning of July 6, 1929, the defendant and his brother were observed burglarizing a drug store at the northeast corner of Seventeenth and Q Streets Northwest, in the city of Washington. The police were notified, and Officer McDonald, among others, responded. This officer stopped for a few moments at the drug store and then drove his car north on Seventeenth street, where he apprehended defendant and his brother, arrested them, ordered them into his car, and drove back to the drug store. As they reached the drug store and the car stopped, a shot was heard inside of the car. Defendant opened the right front door of the car, jumped out of the machine, and ran west on Q street, holding a revolver in his hand. The brother alighted from the car and proceeded to run north on Seventeenth street. McDonald, though wounded, got out of the car, fired a shot at defendant and then shot at the brother. The brother was hit and subsequently died from his wound; defendant escaping uninjured. McDonald subsequently died from the effects of his wound.

*For opinion reversing judgment, see 51 S. Ct. 470, 75 L. Ed. —.

It appears from the testimony that the officer and the two men were in the front seat of the automobile; McDonald at the left side, driving the car, defendant's brother in the center, and defendant at the right. The officer was wounded in the right side of the chest; the bullet, penetrating his body, came out through the back. Defendant's brother, when found where the officer had shot him, had a loaded revolver in his possession which had not been discharged.

Two days later defendant was arrested, and, when taken to the police station, admitted his identity, but insisted that his brother had fired the shot that killed McDonald. He told the officers where his revolver could be found. It was found at the place designated, taken to the police station, and defendant admitted that it was the revolver that he had in his possession the night that he was arrested. It contained two empty shells. Experts testified that the bullet that passed through McDonald's body and was subsequently found on the seat of the automobile had been fired from defendant's revolver. When defendant was confronted with the statement that it was impossible that his brother could have fired the shot, since there was no empty shell found in his revolver when he was killed, he replied: "Well, I am ready to take my medicine."

There was considerable other corroborating evidence which it is unnecessary to consider, since it is not contended that the evidence was insufficient to support a verdict finding defendant guilty of some degree of homicide.

■ Counsel for defendant assigns as error the refusal of the court to allow him to inquire of the prospective jurors on their voir dire whether they entertained racial prejudice in a case wherein the defendant is a negro and the deceased a white man. We had occasion to consider this same question in the case of Crawford v. United States, 59 App. D. C. 356, 41 F. (2d) 979. We have given the matter further careful consideration in this case, and find no reason to recede from our former decision. In a jurisdiction like the District of Columbia, where the colored race is accorded all the privileges and rights under the law that are afforded the white race, and especially the right to practice in the courts, serve on the jury, etc., we are of the opinion that there was no abuse of discretion on the part of the trial court in refusing to permit the question to be answered by the jurors.

■ It is urged by counsel for defendant that the court erred in refusing to withdraw from the consideration of the jury the question of defendant's guilt of first degree murder, on the theory that there was no evidence of premeditation or deliberation. Deliberation and premeditation may be instantaneous. Their existence is to be determined from the facts and circumstances in each case. It is a question, under a proper charge by the court, for the jury to determine. The circumstances under which the present crime was committed all tend to establish the commission of the offense with deliberation and premeditation. Defendant, still armed, was under arrest and had ridden with the officer to the point where the crime for which he was arrested had been committed. While the officer was in the act of stopping his car and engaged with the mechanism of the vehicle, defendant reached past his brother and fired the fatal shot. These circumstances are amply sufficient to justify the conclusion of the jury that the act was done with deliberation and premeditation.

■ Error is assigned on the refusal of the court to declare a mistrial when the widow of the deceased fainted on the witness stand and became hysterical. She was the witness from whom the government could prove the finding of the bullet. She had found the bullet on the seat of the automobile after her husband had been shot, and the scene on the witness stand occurred when she was shown the bullet for identification. Scenes of this kind frequently occur in the courtroom in the course of criminal trials, and, if a circumstance of this sort should result in a mistrial, the administration of justice could be greatly impeded.

■ Error is assigned in the refusal of the court to grant a prayer on behalf of defendant to the effect that, if the jury should find that defendant fired the fatal shot, they would not be justified in returning a verdict of first degree murder, if the evidence was so evenly balanced as to cause them to entertain a reasonable doubt as to whether defendant shot with deliberation and premeditation. While this prayer was denied, the court, in its general charge, defined the degrees of murder, and also gave very full instructions on the question of reasonable doubt and the presumption of innocence. Where a proper prayer is denied, the error will be cured by covering the matter requested in the court's general charge.

■ It appears that defendant was indicted at the July term of the court, 1929, under indictment No. 48537. On November 12, 1929, a plea in abatement was interposed, and, before any action was taken on this plea,

the case was again presented to the grand jury, which returned an indictment charging defendant with murder in the first degree. This indictment was No. 48789. To this indictment defendant pleaded not guilty, and it was on this indictment that he was tried and convicted.

Two days prior to the trial defendant was served with a copy of indictment No. 48537. Without raising any question as to his having been served with the first indictment, he was tried on the second indictment, and reserved his objection to the lack of proper service until the close of the trial. Section 1033 of the Revised Statutes (18 USCA § 562) provides: "When any person is indicted of treason, a copy of the indictment and a list of the jury, and of the witnesses to be produced on the trial for proving the indictment, stating the place of abode of each juror and witness, shall be delivered to him at least three entire days before he is tried for the same. When any person is indicted of any other capital offense, such copy of the indictment and list of the jurors and witnesses shall be delivered to him at least two entire days before the trial."

This provision of the statute is not directory, but it is mandatory on the government to furnish the indictment and the lists therein provided. The statute, however, being enacted for the benefit of the accused, may be waived unless objection is seasonably made. In the case of Logan v. United States, 144 U. S. 263, 304, 12 S. Ct. 617, 630, 36 L. Ed. 429, the court interpreting the provisions of section 1033 [18 USCA § 562] said: "The provision is not directory only, but mandatory to the government; and its purpose is to inform the defendant of the testimony which he will have to meet, and to enable him to prepare his defense. Being enacted for his benefit, he may doubtless waive it, if he pleases; but he has a right to insist upon it, and if he seasonably does so the trial cannot lawfully proceed until the requirement has been complied with."

It is generally held that, if the accused fails to make objection until the trial has started and witnesses have been examined, he will be deemed to have waived the privilege. Regina v. Frost, 9 Car. & P. 129, 175, 187; Lord v. State, 18 N. H. 173, 175. In other words, the duty rests upon him of presenting his objection before the jury is impaneled, or at least when the first witness is called by the prosecution for examination. If the objection is properly made, it would then operate to delay the trial until such time as proper service could be made. A defendant, however, will not be permitted to allow the trial to proceed with the examination of witnesses and then successfully interpose his objection. For the reasons stated, we think, in this case, the objection was not seasonably made, and the defendant will be held to have waived any benefit which he might have had from the service of the proper indictment.

It may be suggested, however, that the only difference between the two indictments consisted in their number and date. The averments in each indictment were the same. What effect this would have had in the decision of the case had timely objection been made by the defendant, it is unnecessary for us to consider.

The judgment is affirmed.