BOSTIC v. UNITED STATES.
No. 6937.

United States Court of Appeals for the District of Columbia.

Decided Dec. 20, 1937.*

Joseph Sitnick, of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., and Roger Robb, Asst. U. S. Atty., both of Washington, D. C., for the United States.

Before GRONER and MILLER, JJ., and WHEAT, District Judge.

MILLER, J.

Appellant was convicted in the District Court of murder in the first degree under an indictment charging him with the killing of William Tuckson, Jr., by shooting him with a pistol. He testified in his own behalf. The assignment of error mainly relied upon in this court is that the trial court erred in admitting evidence of the appellant's prior conviction of simple assault. This evidence was offered for the purpose of impeachment, pursuant to the provisions of section 12, Tit. 9, D.C.Code 1929, section 1067, D.C.Code 1924, which reads as follows: "No person shall be incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of crime, but such fact may be given in evidence to affect his credit as a witness, either upon the cross-examination of the witness or by evidence aliunde."

The word "crime," as used in the statute, includes both felonies and misdemeanors. Murray v. United States, 53 App.D.C. 119, 288 F. 1008, certiorari denied 262 U.S. 757, 43 S.Ct. 703, 67 L.Ed. 1218. A simple assault is a misdemeanor, and hence a crime, under the law of the District of Columbia. Murray v. United States, supra.

Certain language in Clawans v. District of Columbia, 61 App.D.C. 298, 62 F.2d 383, 384, may seem to give some support to appellant's contention. That case involved the admission of evidence of defendant's conviction under a city ordinance before a city magistrate. In holding that evidence inadmissible, we said, inter alia: "But the basis of the admissibility of convictions always was and always should be grounded upon the theory that the depraved character of persons who commit crimes involving moral corruption makes them unworthy of trust in testifying. This theory, however, has little or no basis in the violation of municipal ordinances, or for that matter misdemeanors, involving no element of inherent wickedness." However, the language there used was intended only to distinguish between crimes as such, and that type of delicts which are prohibited by municipal ordinances. It was not intended to modify the plain language of the statute. The test provided by Congress is clear and certain. Any person who has been convicted of a crime, i. e., a felony or misdemeanor, may have that fact given in evidence against him to affect his credit as a witness.

Some of the cases relied on by appellant interpret statutes of different content than that of the District of Columbia—hence, constitute no authority for decision of the present case. Gillman v. State, 1910, 165 Ala. 135, 51 So. 722; People v. Carolan, 1886, 71 Cal. 195, 12 P. 52. The District of Columbia statute is not limited to convictions of felonies, as was the California statute involved in the Carolan Case,[1] or to convictions of crimes involving moral turpitude, as was the Alabama statute on which the Gillman Case was based.[2] As pointed out by the court in Neal v. United States, 8 Cir., 1 F.2d 637, 638, referring to the Oklahoma statute there under consideration, a statute similar in substance to that of the District of Columbia: "Similar statutes have been enacted in many states of the Union. Under them it is generally held that proof of former conviction of a witness of *any crime, regardless of grade,* may be shown. (Italics supplied)" Most

---

[1] Section 2051, Deering's Code of Civil Procedure Cal.1885.

[2] Section 4008, Civil Code Ala. 1907.

of the other cases cited by appellant hold no more than that conviction for violation of a municipal ordinance does not constitute conviction of a crime, although some of them discuss or mention the common law rule that the crime must rise to the dignity of a felony, an infamous crime, or a crime involving moral turpitude. Neal v. United States, supra; Gillman v. State, supra; Arhart v. Stark, 6 Misc. 579, 27 N.Y.S. 301; Meredith v. Whillock, 173 Mo.App. 542, 158 S.W. 1061.

In Lawrence v. United States, 8 Cir., 18 F.2d 407, cited by appellant, the common-law rule was followed. The court said: "It is well settled by the decisions in this [eighth] circuit that evidence of the conviction of a crime for the purpose of affecting the credibility of a witness should be limited to a conviction of a felony, an infamous crime, or a crime involving moral turpitude." The court, in the Lawrence Case, relied upon Haussener v. United States, 8 Cir., 4 F.2d 884, Neal v. United States, supra, and Glover v. United States, 8 Cir., 147 F. 426, 8 Ann.Cas. 1184. Haussener v. United States relies upon Glover v. United States and Neal v. United States. Neal v. United States does not support the proposition, involving as it did only the question of prior conviction under a municipal ordinance, and the dicta of the case, apparently in deference to the case of Rosen v. United States, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406, is definitely opposed to the proposition for which it is now cited as authority. Glover v. United States is not in any sense authority for the decision in the Lawrence Case. In the Glover Case the questions asked of the witness related, not to convictions, but to arrests and accusations. Whatever was said upon the point in issue in the present case was merely dicta, and in addition it should be noted that (1) the court stated as "the general rule" the rule existing in Missouri prior to the adoption of a statute similar to the District of Columbia statute and not the law even in that state for more than ten years prior to its decision; (2) the court expressly avoided stating the "limit" of crimes which should come within the rule for the federal courts; (3) the absence of a statute in Indian Territory, in which the case originated, was expressly noted; and (4) it was expressly stated that the question would not be decided until it came properly before the court.

Under the circumstances, and in view of the plain language of the statute in the District of Columbia, there is no reason why we should adopt the rule followed in the Eighth Circuit. No useful purpose would be served by substituting for the clear and certain test provided by Congress the difficult and uncertain one of the common law. Indeed, it is not within our province to legislate in such manner and thus defeat one of the most important objects of the statute. The evidence was properly admitted. See, also, Clifton v. United States, 54 App.D.C. 104, 295 F. 925.

 It is contended further that there was a fatal absence of deliberation upon the part of the appellant to support a verdict of murder in the first degree. This contention is based upon the theory that there could have been no appreciable lapse of time "between the formation of the design to kill and the actual execution of that design."

This court has stated the applicable rule in Aldridge v. United States, 60 App.D.C. 45, 47, 47 F.2d 407, 408, as follows: "Deliberation and premeditation may be instantaneous. Their existence is to be determined from the facts and circumstances in each case. It is a question, under a proper charge by the court, for the jury to determine."

The authorities agree that no particular length of time is necessary for deliberation. People v. Koenig, 180 N.Y. 155, 162, 72 N.E. 993, 995; People v. Serimarco, 202 N. Y. 225, 229, 95 N.E. 553, 554; Commonwealth v. Tucker, 189 Mass. 457, 494, 495, 76 N.E. 127, 141, 7 L.R.A.,N.S., 1056; Shiflett v. Commonwealth, 143 Va. 609, 130 S.E. 777. It is not the lapse of time itself which constitutes deliberation, but the reflection and consideration, which takes place in the mind of the accused, concerning a design or purpose to kill. People v. Jackson, 196 N.Y. 357, 361, 89 N.E. 924; State v. Lang, 75 N.J.L. 1, 7, 66 A. 942, 945; Commonwealth v. Tucker, supra, 189 Mass. 457, at page 495, 76 N.E. 127, 7 L.R.A.,N.S., 1056. Lapse of time is important because of the opportunity which it affords for deliberation. State v. Smith, 49 Conn. 376; People v. Jackson, supra. The human mind sometimes works so quickly as to make exact measurement of its action impossible, even with the facilities of a psychological laboratory. The jury must determine from the circumstances preceding and surrounding the killing whether reflection and consideration amounting to deliberation actually occur-

red. People v. Schmidt, 168 N.Y. 568, 61 N.E. 907; State v. Smith, supra, 49 Conn. 376, at page 389. If so, even though it may have been of exceedingly brief duration, that is sufficient. It is the fact of deliberation which is important, rather than the length of time during which it continued. People v. Harris, 209 N.Y. 70, 75, 102 N.E. 546, 548; Commonwealth v. Tucker, supra; Commonwealth v. Scott, 284 Pa. 159, 163, 130 A. 317, 319. In one jurisdiction it has been said that deliberation may be present even though the act of killing follows the intention to kill as instantaneously as successive thoughts of the mind. People v. Donnelly, 190 Cal. 57, 210 P. 523; People v. Bellon, 180 Cal. 706, 710, 182 P. 420, 422. In others the courts have insisted that some appreciable time must elapse in order that reflection and consideration amounting to deliberation may occur. People v. Guadagnino, 233 N.Y. 344, 353, 135 N.E. 594, 597; State v. Clayton, 83 N.J.L. 673, 85 A. 173; State v. Arata, 56 Wash. 185, 105 P. 227, 21 Ann. Cas. 242; State v. Dodds, 54 W.Va. 289, 297, 46 S.E. 228; State v. Greenleaf, 71 N. H. 606, 54 A. 38. This is the better statement of the rule. Even in the latter jurisdictions, however, it is recognized that this does not require the lapse of days or hours, or even minutes. People v. Gilbert, 199 N. Y. 10, 24, 92 N.E. 85, 89, 20 Ann.Cas. 769; State v. Lang, 75 N.J.L. 1, 7, 66 A. 942, 945; State v. Gin Pon, 16 Wash. 425, 430, 47 P. 961; State v. Dodds, supra; State v. Greenleaf, supra, 71 N.H. 606, at page 614, 54 A. 38. See, also, Commonwealth v. Tucker, 189 Mass. 457, 494, 76 N.E. 127, 141, 7 L.R.A.,N.S., 1056; Commonwealth v. Buccieri, 153 Pa. 535, 542, 26 A. 228, 231; Commonwealth v. Santos, 275 Pa. 515, 530, 119 A. 596, 602.

Tested by the rule as applied in either jurisdiction, appellant's contention that there was insufficient time for deliberation is not supported by the evidence in this case. This is clearly revealed by his own testimony, which, in part, is as follows: "That he was 24 years old; that he had lived in Washington for four years; that on October 9, 1936, he lived at No. 14 L Street NW.; that on the evening of October 9, he got off from work at about seven o'clock; that he then came home and was lying across the bed, when Frank Martin came in; that the defendant then went down to the liquor store and bought a half pint of whiskey, and then the defendant, Frank, Weaver, and Stevens drank the said whiskey in the alley; that the defendant then went to the liquor store to buy two cans of beer; that as he was going into the store, he spoke to a girl, and she said to the defendant, 'Go to H'; that the defendant then said, 'Gee! lady, you have got a nasty mouth,' and then the defendant walked into the store, got the beer and came out; that when the defendant came out of the store, he saw the girl standing with the deceased and another girl; that the defendant then said to the deceased, 'Mister, is that your wife?'; that the deceased said 'No; that is my sister; what about it? I will back up anything she said'; that the defendant then said, 'Oh, you are upholding her devilment'; that the deceased then said that he would back her up on anything she would say; that she was his sister and woman both; that the defendant then said, 'Well, Mister, you are looking for trouble'; that then the deceased cursed him, and defendant walked up ahead of the deceased and the girls to the corner of the alley; that then the defendant proceeded ahead to No. 14 L Street and stopped; that then the deceased came out in front of the defendant and stopped and cursed the defendant again; that the defendant then said to the deceased, 'You are supposed to be that little bad so-and-so'; that then the deceased [said] 'You are supposed to be the bad one'; that then the deceased grabbed his pocket for his knife or razor, or whatever he had; that then the defendant handed the beer to one of the boys and backed up, and when the deceased made for the defendant, defendant took out the pistol and shot the deceased." One of the other witnesses fixed the time which elapsed between the first hostile conversation and the shooting as five or ten minutes. It is obvious that several minutes must have elapsed to permit the participants to walk the distance described by the defendant. The fact that appellant and the deceased were unacquainted, and the absence of evidence that he bore the deceased any ill will prior to their meeting on the fatal occasion, does not prevent the conclusion that there was sufficient time for deliberation. Commonwealth v. Scott, 284 Pa. 159, 163, 130 A. 317, 319; Bowman v. United States, 59 App.D.C. 90, 267 F. 648; Aldridge v. United States, 60 App.D.C. 45, 47 F.2d 407; People v. Schmidt, 168 N.Y. 568, 574, 61 N. E. 907, 909.

The lower court's charge to the jury covered the subject fully and fairly and,

before the jury retired, at the suggestion of the District Attorney, a further charge was given as follows: "There must be an appreciable period; that is, a period which you, in your judgment, would think, under the circumstances, was sufficient time for deliberation." No exception was taken to the charge as given. That it properly stated the law upon this point there can be no question.

We are urged to find that Bostic killed Tuckson "in self-defense from supposed danger, a fear induced naturally by a hostile conversation and gestures by the deceased." Even though the testimony of Bostic had stood alone, it would have had little tendency to prove that he acted in self-defense. The testimony of the other witnesses, including those who testified for the appellant, indicated that he was an officious aggressor throughout. He first accosted Dorothy Ferguson, a young woman acquaintance of the deceased, and was rebuffed by her. After a few minutes had elapsed he saw the deceased with Dorothy Ferguson—to both of whom he was a stranger—and spoke in an uncomplimentary manner to the deceased about her and in her presence. As was to be expected, he was again rebuffed. After approximately five or ten minutes had elapsed, during which neither the deceased nor Dorothy Ferguson had paid any attention to him, he again approached them and again addressed them with provocative language. There is little in the evidence which indicates any action upon the part of Tuckson, the deceased, to frighten the appellant except the latter's own testimony. His story of threatening acts on the part of the deceased grew, in his telling of it, from his confession to the police, until his final testimony on the witness stand. His testimony was sharply contradicted by other witnesses. Appellant's actions in shooting a second time at the deceased while the latter was running from him, and firing a third shot to frighten the young woman, do not suggest that he was acting in fear of injury or "supposed danger." All of this evidence was before the jury. The court instructed fully upon the subject of self-defense and, in addition, granted all of the five instructions upon the same subject offered on behalf of the appellant, as well as all other prayers offered by appellant. The verdict was fully supported by the evidence and, such conflict as there was therein having been resolved by the jury in a determination of appellant's guilt, there is no reason why we should interfere with that determination. Preston v. United States, 65 App.D.C. 110, 80 F.2d 702.

We have carefully considered the other assignments of error and find them without merit. Upon the whole record we are convinced that the appellant was accorded a fair trial.

Affirmed.